**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALEJANDRO OSUNA, <br><br> Plaintiff, <br><br> v. <br><br> DONATO VINCENT POMPO and VINCENT NICHOLAS POMPO, <br><br> Defendants. <br><br> And Related Counter-Claim. | Case No.: 18-CV-2346 W (MDD) <br><br> **ORDER:** <br> **(1) GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOC. 27];** <br><br> **(2) GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DOC. 28.]** |

Pending before the Court are cross motions for summary judgment in this malicious prosecution dispute. Plaintiff Alejandro Osuna's ("Osuna") motion seeks summary judgment on its malicious prosecution claim and Defendants' counterclaim for breach of fiduciary duty. (*Pl's MSJ Notice* [Doc. 28] 2:13–27.) Defendants' motion seeks summary adjudication regarding Osuna's malicious prosecution claim. (*Defs' MSJ Notice* [Doc. 27] 3:1–3.) The parties also filed requests for judicial notice. (*Defs' RJN* [Doc. 27-5]; *Pl's RJN* [Doc. 28-5]; *Pl's RJN* [Doc. 30-3].) Osuna later filed a motion to

1

amend the motion for summary judgment to correct certain citations to the evidence. [Doc. 31.]

The Court decides the matters on the papers submitted, and without oral argument. See Civ. L.R. 7.1(d)(1). For the reasons set forth below, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Plaintiff Osuna's motion [Doc. 28]; **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants' motion [Doc. 27]; **GRANTS** the requests for judicial notice; and **GRANTS** the motion to correct the motion for summary judgment [Doc. 31].

I. **BACKGROUND**

This dispute arises from an underlying criminal complaint filed by Defendant Vincent Pompo ("Vincent") in Tecate, Mexico, against Osuna. (*Compl.* [Doc. 1] ¶ 33.) The criminal complaint accused Osuna of representing both sides of a real property contract and subsequently filing suit against one of the parties to the contract. (*Id.*) Under article 337 of the Criminal Code of Baja California, it is a crime for an attorney to represent parties with adverse interests in the same matter. (*Vincent Decl.* [Doc. 27-3] ¶ 17.)

The facts comprising the basis for the criminal complaint begin in September 2012, when Jan Kalicki ("Kalicki") retained Osuna to file a lawsuit in Mexico regarding real property located in Playas de Tijuana ("the Playas Property"). (*Osuna Decl.* [Doc. 28-2] ¶¶ 3–4.) By that time, however, Kalicki was behind on payments to Vincent under a buy-sell agreement for another piece of real property in Rosarito, Mexico ("the Rosarito Property"). (*Kalicki Decl.* [Doc. 28-3] ¶ 4.) As a result, Kalicki and Vincent entered into an Addendum to their buy-sell agreement whereby Vincent agreed to "loan [Kalicki] $3,000 US Dollars to be used to pay attorney [Osuna] a retainer fee to pursue the collection of [Kalicki's] interest in the [Playas Property] . . . ." (*Rosarito Purchase Addendum* [Doc. 28-6] Ex. 3, ¶ 5.) The Addendum further provided that Kalicki expected to receive up to $680,000 for his interest in the Playas Property and would apply at least 50% of those proceeds towards the balance owed on the Rosarito Property. (*Id.*)

2

Donato Pompo ("Donato")—Vincent's son—typed up the final Addendum once Vincent and Kalicki agreed to the new terms. (*Donato Decl.* [Doc. 27-2] ¶ 5.) Osuna was not involved in the negotiation or drafting of the Addendum. (*J. Stmt. Undisputed Facts* [Doc. 32] ¶ 5.)

On November 9, 2012, Kalicki and the Pompos met at Osuna's office. (*Kalicki Decl.* [Doc. 28-3] ¶ 10.) At the meeting, Vincent and Kalicki executed the Addendum, with Donato and Osuna signing on as witnesses. (*Osuna Decl.* ¶ 10; *Rosarito Purchase Addendum* [Doc. 28-6] Ex. 3.) The meeting ended with Vincent making out a personal check to Osuna for $3,000. (*Osuna Decl.* ¶ 14.)

In early 2013, after a review of public records, Osuna advised Kalicki that Vincent's title to the Rosarito Property was defective. (*Osuna Decl.* ¶ 17.) Later that same year, a $300,000 lien was recorded on the Rosarito Property due to a suit between Defendants and another party. (*Osuna Decl.* ¶ 20.) In response to the lien, Kalicki filed a lawsuit requesting that registration to the Rosarito Property be cancelled and a criminal complaint with the District Attorney in Tecate, Mexico, alleging the lien was the result of a fraudulent lawsuit intended to cloud title to the Rosarito Property. (*Osuna Decl.* ¶¶ 22–23.)

On January 28, 2015, Vincent filed the criminal complaint underlying the present dispute. (*J. Stmt. Undisputed Facts 2* [Doc. 34-2] ¶ 17.) In it, he claimed Osuna had violated article 337 of the Criminal Code of Baja California, which prohibits representation of adverse interests in the same matter. (*Vincent Decl.* [Doc. 27-3] ¶ 17.) Specifically, the translated Complaint states:

> That is, it is settled Law that the crime is evidenced when the constituent elements appear and was committed when the active subject helped the said [Kalicki] and the undersigned [Vincent] to draft the addendum to the sales contract that we made, related to the [Rosarito Property], for which I agreed with Attorney [Osuna] that he become involved in this matter so that he could clarify some clauses of this commercial contract, amongst them [Kalicki's] obligation to pay me a monthly rent for the use of the property, in the amount of $1,650.00 (one thousand six hundred and fifty dollars, United

States currency) until he finished paying the debt from the sales contract, said contract addendum was drafted by [Osuna's] own hand, for which the undersigned paid him the amount of $3,000.00 (three thousand, currency of the United States) so that he would become involved in this matter with the undersigned and with [Kalicki], as evidenced with the copy that is attached which shows a copy of a check that reads citybank, made out to the name of [Osuna] for the amount of $3,000.00 (three thousand dollars, United States Currency), notwithstanding when the said [Kalicki] filed a criminal complaint against me, the now accused [Osuna] participated, knowing that as an attorney at law he was barred from participating in that matter because that would mean he would fall within the legal description of the crime of Breach of Legal Duty . . . .

(*Translation of Crim. Compl.* [Doc. 28-6] Ex. 8, at 80.)[1]

Following a 21-month investigation, which included testimony from Donato, Osuna, and Kalicki, the Tecate District Attorney determined sufficient evidence existed to issue a warrant for Osuna's arrest and transmit the case to a Judge of the Mexican Superior Court. (*Communication from District Attorney* [Doc. 28-6] Ex. 8, at 75.) The Superior Court Judge agreed and Osuna was arrested on December 15, 2016. (*Osuna Decl.* ¶ 29.) A few days later, an article appeared in El Mexicano newspaper with a photo of Osuna captioned as follows: "A crooked lawyer was arrested in Tecate on December 12th, for swindling Americans out of their money. Since then he has been jailed in the State Penitentiary. He was an attorney for Andrew Tahmooressi, the marine that was arrested in Tijuana." (*Osuna Decl.* ¶ 38.)

On February 17, 2017, a hearing occurred in the Tecate Criminal court. (*Donato Testimony* [Doc. 28-6] Ex. 8, at 154.) At the hearing, Donato testified that Vincent "paid Osuna Three Thousand Dollars United States Currency with a check, so that Osuna

---

[1] The parties each request the Court take judicial notice of the underlying Mexican court proceedings. (*See Defs' RJN* [Doc. 27-5]; *Pl's RJN* [Doc. 28-5]; *Pl's RJN* [Doc. 30-3].) The requests are unopposed. Because the documents are properly the subject of judicial notice, the Court **GRANTS** the requests and takes judicial notice of the attached exhibits.

4

would draft an agreement, to ensure that my father was paid in full for the house or if he did not pay in full within one year that he return it." (*Donato Testimony* at 155.)

As the criminal proceeding commenced, Osuna simultaneously filed an "amparo" proceeding, which is the Mexican equivalent of a habeas action. (*Osuna Decl.* ¶ 43.) The amparo court concluded that, even if the allegations against him were true, Osuna could not have represented "two or more contending parties in the same matter." (*Amparo Ruling* [Doc. 28-6] Ex. 6, at 40.) Vincent's appeal of the amparo decision was denied in October 2017. (*Osuna Decl.* ¶ 48.) Thus, the amparo court's decision became final and terminated the criminal proceedings against Osuna. (*Osuna Decl.* ¶ 48.)

On October 10, 2018, Osuna filed this lawsuit against Defendants for their role in instigating the criminal proceeding against him. The Complaint asserts a single cause of action for Malicious Prosecution. [Doc. 1.]

On November 15, 2018, Defendants' filed a counterclaim asserting a single cause of action for Breach of Fiduciary Duty. [Doc. 8.]

The parties have now filed timely cross-motions for summary judgment. Osuna's motion seeks to establish the following:

(1) Defendants actively caused Osuna's criminal prosecution;
(2) The underlying criminal proceeding concluded in Osuna's favor;
(3) No reasonable person would have believed there were grounds for causing Osuna to be prosecuted;
(4) Defendants acted for a purpose other than bringing Osuna to justice;
(5) Defendants harmed Osuna;
(6) Defendants' conduct was a substantial factor in causing that harm; and
(7) No reasonable person would have believed there was an attorney-client relationship between Osuna and Defendants.

(*Pl's MSJ Notice* 2:13–27.) Defendants' motion seeks to establish that:

(1) Donato cannot be liable for malicious prosecution because he did not initiate or maintain the underlying criminal action against Osuna;

5

   (2) Vincent had probable cause to complain of Osuna's actions;

   (3) Osuna cannot overcome the presumption that the Tecate District Attorney recommended the criminal court proceeding after conducting an independent investigation; and

   (4) Defendants' Eighth and Ninth Affirmative Defenses succeed because Vincent only pursued the criminal action after consulting with legal counsel and being advised that he was within his rights to do so.

(*Defs' MSJ Notice* 2:9–23.)

## II. APPLICABLE LAW

  Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

  A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. Id. at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159–60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot avoid summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." In re Citric Acid Litig., 191 F.3d 1090, 1094 (9th Cir. 1999) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995) (citing Anderson, 477 U.S. at 252) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Ford Motor Credit Co. v. Daugherty, 279 Fed. Appx. 500, 501 (9th Cir. 2008) (citing Celotex, 477 U.S. at 324). Additionally, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587.

Rule 56(d) provides for partial summary judgment. See Fed. R. Civ. P. 56(d) ("[T]he court . . . shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted."). Under Rule 56(d), the court may grant summary judgment on less than the non-moving party's whole claim. Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc., 313 F.3d 385, 391 (7th Cir. 2002) (Posner, J.). Partial summary judgment is a mechanism through which the Court deems certain issues established before trial. Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) (quoting 6 Moore's Federal Practice ¶ 56.20 (3.–2) (2d ed. 1976)). "The procedure was intended to avoid a useless trial of facts and issues over which there was really never any controversy and which would tend to confuse and complicate a lawsuit." Id.

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its merits." Fair Hous. Council of Riverside Cnty, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotes and citations omitted). Thus, "the court must rule on each party's motion on an individual and separate basis,

7

determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Id. (quoting Wright, et al., Federal Practice and Procedure § 2720, at 335–36 (3d ed. 1998)).  If, however, the cross-motions are before the court at the same time, the court is obliged to consider the evidence proffered by both sets of motions before ruling on either one.  Id. at 1134.

## III. DISCUSSION

### A. Breach of Fiduciary Duty

Osuna seeks summary judgment against Defendants' sole counterclaim for breach of fiduciary duty.  The Court will address the threshold issue before proceeding with the malicious prosecution claim.

Defendants argue Osuna owed them a fiduciary duty by means of an implied-in-fact attorney-client relationship resulting from their November 9 meeting. (*Defs.' Opp'n* [Doc. 29] 6:7-11.)  Whether an implied-in-fact attorney-client relationship can be inferred is determined by the conduct and intent of the parties.  Hecht v. Superior Court, 192 Cal. App. 3d 560, 565 (Ct. App. 1987).  The existence of an attorney-client relationship is a question of law to be determined by the court.  Meehan v. Hopps, 144 Cal. App. 2d 284, 287 (1956).

There are no facts here permitting any reasonable inferences from which the existence of an attorney-client relationship between Defendants and Osuna could be found.  Defendants knew Kalicki hired Osuna to represent him regarding the Playas Property litigation, had never communicated with Osuna before the November 9 meeting, and never communicated directly with Osuna again. (*J. Stmt. Undisputed Facts* [Doc. 32] ¶¶ 6, 7, 12.)  Defendants' only contact with Osuna was when they visited his office to execute an Addendum that was drafted by Donato based on a meeting Osuna did not attend. (*J. Stmt. Undisputed Facts* ¶ 5.)  In the Addendum, Vincent agreed to "loan [Kalicki] $3,000 US Dollars to be used to pay attorney [Osuna] a retainer fee to pursue the collection of [Kalicki's] interest in the [Playas Property] . . . ." (*Rosarito Purchase*

8

*Addendum* [Doc. 28-6] Ex. 3, ¶ 5.) Therefore, the $3,000 check given to Osuna at the meeting was in fact a loan to be repaid by Kalicki along with 50% of the Playas Property litigation proceeds. (*Id.*)

Defendants' belief that Osuna's signature on the Addendum was confirmation of his legal opinion regarding its validity and enforceability under Mexican law is both inconsequential and unreasonable. First, Defendants' subjective belief, without more, is insufficient to create an attorney-client relationship. Fox v. Pollack, 181 Cal. App. 3d 954, 959 (Ct. App. 1986). In other words, Defendants cannot unilaterally establish an attorney-client relationship merely because they believe his signature meant he was advising them. This is especially true considering that the express language disputes that belief—Osuna's signature is expressly limited to that of a "Witness." (*Rosarito Purchase Addendum* [Doc. 28-6] Ex. 3.) In addition, Donato, who is not a lawyer, also signed the Addendum under the identical designation of "Witness." This strongly suggests the witness signatures were acknowledgements of the Addendum's execution by Vincent and Kalicki, rather than attestations as to its legality. Finally, even if Osuna expressed a legal opinion as to the Addendum's validity, the reasonable conclusion is that he did so in his established capacity as Kalicki's lawyer. Without more, it is unreasonable to conclude that Osuna's signature on the Addendum meant he was representing both sides of the agreement. Consequently, as to the cause of action based on breach of fiduciary duty, the Court grants summary judgment to Osuna.

### B. <u>Malicious Prosecution Claim</u>

Osuna argues he is entitled to summary judgment on his malicious prosecution claim or partial summary judgment on each of its elements. Osuna must show (1) the underlying action was commenced by Defendants, (2) concluded in Osuna's favor, (3) brought without probable cause, and (4) initiated with malice. See Sheldon Appel Co. v. Albert & Oliker, 47 Cal. 3d 863, 864 (1989).

9

### 1. Initiation of the Criminal Action

That Vincent initiated the criminal action is not in dispute. What is disputed is whether Donato can also be construed as having "initiated" the action merely by providing witness testimony.

The undisputed evidence is that Vincent filed the criminal complaint against Osuna on January 28, 2015. (*J. Stmt. Undisputed Facts* [Doc. 32] ¶ 13; *J. Stmt. Undisputed Facts 2* [Doc. 34-2] ¶ 17; *Osuna Decl.* [Doc. 28-2] ¶ 25.) On February 19, 2015, Donato provided an oral statement to the investigating District Attorney, wherein he claimed Vincent "hired [Osuna] . . . to draft the contract . . . ." (*J. Stmt. Undisputed Facts* [Doc. 32] ¶ 14; *Donato Witness Stmt.* [Doc. 28-6] Ex. 8, at 86.) Twenty months later, the District Attorney determined there was sufficient evidence to prosecute Osuna. (*J. Stmt. Undisputed Facts 2* [Doc. 34-2] ¶ 19.) At the criminal proceedings, Donato testified that his father, Vincent, had retained Osuna as an attorney. (*Donato Testimony* [Doc. 28-6] Ex. 8, at 155.) He also claimed Osuna drafted the Addendum and that Vincent paid Osuna $3,000 for these alleged legal services. (*Id.*)

It is clear that one does not need to sign the complaint commencing the criminal proceeding to be liable for malicious prosecution. <u>Zucchet v. Galardi</u>, 229 Cal.App.4th 1466, 1481 (2014). The Restatement of Torts states, "one who continues a civil proceeding . . . for an improper purpose after he has learned there is no probable cause for the proceeding becomes liable as if he had initiated the proceeding." Restatement (Second) of Torts § 674 (1977). The comments to section 655—which are applicable to section 674—further provide that "[the section] applies also when the proceedings are initiated by a third person, and the defendant, knowing that there is no probable cause for them, thereafter takes an active part in procuring their continuation." <u>Id.</u> § 655. "The test is whether the defendant was actively instrumental in causing the prosecution." <u>Sullivan v. Cty. of Los Angeles</u>, 12 Cal. 3d 710, 720 (1974). "Cases dealing with actions for malicious prosecution against private persons require that the defendant has at least

sought out the police or prosecutorial authorities and falsely reported facts to them indicating that plaintiff has committed a crime." Id.

Merely providing testimony and responding to law enforcement questioning in an active criminal proceeding is not enough. See Cedars-Sinai Med. Ctr. v. Superior Court, 206 Cal. App. 3d 414, 417–18 (1988). In Cedars-Sinai, two witnesses testified at a preliminary hearing against the plaintiff after being approached by authorities in an ongoing arson investigation. The court found the witnesses did not "instigate, nor were they 'actively instrumental in causing,' the prosecution" merely by responding to inquiries during an ongoing investigation. Id. at 417.

To be liable for malicious prosecution without filing the initial complaint, the person must affirmatively encourage the prosecution, either through advice or encouragement. Zucchet, 229 Cal.App.4th at 1485. In Zucchet, the issue was whether a cooperating codefendant who gave false information to prosecutors and testified at trial was actively instrumental in causing the prosecution. Id. at 1482. Although the testimony significantly changed the outcome of the case, there was no evidence the codefendant "insisted upon or urged further prosecution of the case against Zucchet, or that he gave advice to the prosecutors or placed pressure on the government to continue the case against Zucchet." Id. at 1485.

Similarly, here, there is no evidence that Donato affirmatively encouraged the prosecution to continue the case against Osuna. Rather, it appears that Donato was interviewed during an ongoing investigation and later testified at trial. By itself, that is not enough. See Cedars-Sinai Med. Ctr., 206 Cal. App. 3d at 417–18. Nor is it enough to say that he lied in giving that testimony. See Zucchet, 229 Cal.App.4th at 1485. Osuna has failed to show that Donato was actively instrumental in causing the prosecution. Thus, the cause of action against Donato for malicious prosecution necessarily fails.

//

//

11

### 2. Concluded in Osuna's Favor

A plaintiff alleging malicious prosecution must prove that the prior proceeding was terminated in their favor. Casa Herrera, Inc. v. Beydoun, 32 Cal. 4th 336, 341 (2004). A termination is favorable if it reflects on the plaintiff's innocence of the charged misconduct, rather than mere technical or procedural reasons. Ray v. First Fed. Bank, 61 Cal. App. 4th 315, 318 (1998).

The parties do not dispute that the underlying criminal complaint terminated in Osuna's favor. The Amparo court concluded that the evidence was insufficient to show the elements of the crime attributed to Osuna. (*Amparo Ruling* [Doc. 28-6] Ex. 6, at 33.) Once Vincent's appeal was subsequently denied, the Amparo court's decision became final and terminated the criminal proceedings against Osuna. Because it addressed Osuna's innocence of the charged crime—representation of adverse interests in the same matter—the termination was in Osuna's favor.

### 3. Brought Without Probable Cause

The malicious prosecution plaintiff must allege and prove the prior action was initiated or continued without probable cause. Wilson v. Parker, Covert & Chidester, 28 Cal. 4th 811, 824 (2002). Probable cause is a question of law to be decided by the court. Id. at 817. Further, probable cause is to be determined objectively. Thus, it exists if "any reasonable attorney would have thought the claim tenable." Sheldon Appel Co. v. Albert & Oliker, 47 Cal. 3d 863, 886 (1989).

Applying the probable cause standard to the case at hand, the Court concludes the prior action was instituted without probable cause. The criminal complaint filed against Osuna states, "[the] contract addendum was drafted by [Osuna's] own hand, for which the undersigned paid him the amount of $3,000.00." (*Translation of Crim. Compl.* [Doc. 28-6] Ex. 8, at 80.) Vincent initiated the proceedings against Osuna knowing full well the $3,000 payment was a loan to Kalicki for which he expected to be repaid, rather than a payment to Osuna for drafting the Addendum and providing legal advice as to its

enforceability. (*See Rosarito Purchase Addendum* [Doc. 28-6] Ex. 3, ¶ 5.) Additionally, Donato has since admitted that he was the drafter of the Addendum, not Osuna. (*Donato Decl.* [Doc. 27-2] ¶ 5.) Thus, Osuna had no involvement in the negotiation or drafting of the Addendum. (*J. Stmt. Undisputed Facts* [Doc. 32] ¶ 5.) No reasonable attorney would have believed that Osuna then represented the Defendants where they knew he was the other party's attorney, they did not pay him for his services, and they had no contact with him other than the single occasion when they visited his office for the sole purpose of executing the Addendum. (*J. Stmt. Undisputed Facts* [Doc. 32] ¶¶ 6, 7, 12.)

Defendants argue the interim adverse judgment rule precludes liability because the Tecate District Attorney and the Mexican court determined there was sufficient evidence to proceed with the criminal prosecution. However, the interim adverse judgment rule only forecloses liability for malicious prosecution after a ruling on the merits of the claim. Parrish v. Latham & Watkins, 3 Cal. 5th 767, 778 (2017). Further, "even where a ruling is based on the court's evaluation of the merits of the claim, the ruling does not establish the existence of probable cause if the ruling is 'shown to have been obtained by fraud or perjury.'" Id. (quoting Wilson v. Parker, Covert & Chidester, 28 Cal. 4th 811, 820 (2002)). Not only was there not a ruling on the merits in the underlying prosecution—such as a trial verdict or a summary judgment order—but any decisions to proceed with the criminal prosecution were obtained by fraud or perjury. The Mexican District Attorney and Mexican court's determinations of probable cause were made on the basis of falsely sworn statements by Vincent and Donato. Namely, that Osuna drafted the Addendum—it was drafted by Donato—and that Vincent paid Osuna $3,000 for his involvement—it was a loan stipulated to under the Addendum. (*Donato Decl.* [Doc. 27-2] ¶ 5; *Rosarito Purchase Addendum* [Doc. 28-6] Ex. 3, ¶ 5.)

Defendants also argue that Osuna has failed to "overcome the presumption that the prosecutor exercised independent judgment in prosecuting the criminal charge." (*Defs' MSJ* 11:11–33 (citing *Lasic v. Moreno*, 504 F.Supp.2d 915, 921 (E.D. Cal 2007).)) However, the rebuttable presumption that the prosecutor exercised independent judgment

in prosecuting a criminal charge applies to shield investigating officers from damages, not citizens initiating a criminal complaint. See Lasic, 504 F.Supp.2d at 921 (explaining that the "[t]he Ninth Circuit has long recognized that filing a criminal complaint immunizes investigating officers . . . .") The presumption does not apply here. Even if it did, the presumption has been rebutted by proof that Vincent knowingly supplied false information. See id. at 922 ("[T]o overcome the presumption of independent judgment, a plaintiff must show . . . that the [initiating party] knowingly supplied false information.")

Finally, it is unavailing that Vincent obtained advice from counsel prior to initiating the criminal complaint. While good faith reliance on advice of counsel is a complete defense, the advice must have been given after truthful disclosure of all relevant facts. Bisno v. Douglas Emmett Realty Fund 1988, 174 Cal. App. 4th 1534, 1544 (2009). The burden of proving the advice of counsel defense is on Defendants. See Nunez v. Pennisi, 241 Cal.App.4th 861, 877 (2015). Defendants fail to describe what information they provided their attorney, Carloz Gonzales. Given the demonstrable falsehoods contained in Defendants' initial complaint and later sworn statements, either Defendants did not truthfully disclose all the relevant facts to Gonzales or Gonzales knew they were false and proceeded anyway. Either way, Defendants' defense fails. Gonzalez' claim that he independently corroborated the information Defendants supplied does not save the defense. "Although attorneys may rely on their clients' allegations at the outset of the case, they may not continue to do so if the evidence developed through discovery indicates the allegations are unfounded or unreliable." Cuevas-Martinez v. Sun Salt Sand, Inc., 35 Cal. App. 5th 1109, 1121 (Ct. App. 2019). All Gonzales needed to find the allegations unfounded was read the Addendum, which stated the $3,000 was a loan for a different matter. The advice of counsel defense fails.

### 4. Initiated with Malice

Finally, Osuna must prove Vincent initiated the underlying action with malice. The malice element refers to an improper purpose for initiating the prior action. Daniels

v. Robbins, 182 Cal. App. 4th 204, 224 (2010). It exists when a suit is actuated to misuse the legal system for some purpose other than enforcing legitimate rights. Drummond v. Desmarais, 176 Cal. App. 4th 439, 452 (2009). "[A] plaintiff acts with malice when he asserts a claim with knowledge of its falsity, because one who seeks to establish such a claim 'can only be motivated by an improper purpose.'" Id. (citing Albertson v. Raboff, 46 Cal. 2d 375, 383(1956)); see also Nunez v. Pennisi, 241 Cal. App. 4th 861, 877 (2015) (inferring malice from "knowingly false allegations" in the underlying complaint).

There is ample evidence that Vincent filed the underlying action with malice. As discussed above in the context of probable cause, Vincent's criminal complaint was based in part on allegations that Vincent paid Osuna $3,000 for drafting the Addendum. (*See Translation of Crim. Compl.* [Doc. 28-6] Ex. 8, at 80.) Defendants have since admitted those allegations were false. (*J. Stmt. Undisputed Facts* [Doc. 32] ¶ 5.) Moreover, Defendants admit that "[t]he criminal complaint against Osuna was brought as part of a broader strategy to maintain possession of the Rosarito Property." (*J. Stmt. Undisputed Facts* [Doc. 32] ¶ 18.) In other words, Defendants' purpose for bringing the criminal complaint was not to bring Osuna to justice, but in fact to defend against Kalicki's adversarial interest in the Rosarito Property. There is no genuine issue of material fact here—the false allegations and admitted pecuniary purpose establish Vincent's malicious intent.

### IV. CONCLUSION & ORDER

For the reasons set forth above, the Court **ORDERS** the following:

1. Plaintiff's Motion for Summary Judgment is **GRANTED** as to the Breach of Fiduciary Duty claim and Malicious Prosecution claim against Defendant Vincent Pompo, and **DENIED** as to Defendant Donato Pompo [Doc. 28];
2. Defendants' Motion for Summary Judgment is **GRANTED** as to Defendant Donato Pompo and **DENIED** as to Defendant Vincent Pompo [Doc. 27];

15

3. The Requests for Judicial Notice are **GRANTED**. (*Defs' RJN* [Doc. 27-5]; *Pl's RJN* [Doc. 28-5]; *Pl's RJN* [Doc. 30-3]); and
4. **GRANTS** the motion to amend the motion for summary judgment [Doc. 31].

**IT IS SO ORDERED.**

Dated: April 2, 2020

_____
Hon. Thomas J. Whelan
United States District Judge